UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD YANDELL, et al.,<br><br>Defendants. | No.  19-cr-00107-KJM<br><br><br>ORDER |

On December 2, 2019, the court heard defendant Michael Torres' motions for the court to order the California Department of Corrections and Rehabilitation ("CDCR") to release him from administrative segregation ("Ad-Seg") and return him to the general population at California State Prison–Sacramento ("CSP–Sacramento"), ECF No. 175 ("Ad-Seg Mot.") and to "stop the inhuman shackling of Defendants at all non-jury proceedings," ECF No. 204 ("Shackling Mot."). Michael Torres appeared in pro per, accompanied by his standby counsel Michael Hansen; Jason Hitt appeared for the government. The court now DENIES the motion for release from administrative segregation as moot and DENIES the shackling motion.

I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns an alleged conspiracy between incarcerated members of the Aryan Brotherhood prison gang, their associates outside of prison, and Torres, who is alleged to belong to another gang, the Mexican Mafia. *See generally* Compl., ECF No. 1; Indictment,

1

ECF No. 25.  The complaint alleges the defendants conspired to kill other inmates throughout the California prison system and engaged in systematic contraband smuggling and drug distribution both in and out of prison.  *See generally* Compl.  Torres is accused of conspiring with Aryan Brotherhood members to distribute methamphetamine and heroin.  Indictment ¶ 56.  He has not been charged in any of the homicide offenses in the indictment.  Torres is housed at CSP–Sacramento.

### A. Procedural Background

On August 30, 2018, Torres filed the Ad-Seg Motion.  Ad-Seg Mot.  On September 19, 2019, he filed the Shackling Motion.  Shackling Mot.  On December 2, 2019, the court held a hearing on the motions.  Both matters have been fully briefed.  *See* Opp'n to Ad-Seg Motion, ECF No. 216; Opp'n to Shackling Motion, ECF No. 237; Ad-Seg Reply, ECF No. 284; Shackling Reply, ECF No. 288; Gov. Ad-Seg Sur-reply, ECF No. 293; Gov. Suppl. Evid., ECF No. 323; Torres Shackling Suppl. Br., ECF No. 330; Torres Ad-Seg Suppl. Br., ECF No. 337.

Since the submission of both motions, the California Department of Corrections and Rehabilitation (CDCR) has represented that Torres was released from administrative segregation and placed into the general population unit at CSP–Sacramento.  *See* CDCR Mot. Recons. at 2, ECF No. 521.  Torres agreed he had been moved to a general population unit at a separate hearing on that motion on September 28, 2020.  Hr'g Minutes, ECF No. 635.

### B. Administrative Segregation

Torres was already incarcerated at CSP–Sacramento when he was indicted in this case. Ad-Seg Mot. at 2.  Broadly, Torres alleges he was placed in CSP–Sacramento's Administrative Segregation Short Term Restricted Housing unit on June 4, 2019, where he claims he was subjected to the unsanitary and inhumane conditions.  *See generally* Ad-Seg Mot.  The government asserted Torres was placed in administrative segregation because he possessed contraband, a handcuff key and cell phone charger, and there were indications he was involved in bringing drugs into the prison.  Gov. Suppl. Evid. at 1–2.  The court need not review the details of Torres' confinement in administrative segregation in detail given that he represents he is now in a general population unit as of September 28, 2020.

C.  <u>Torres' Shackling Level</u>

The duty magistrate judge set Torres' shackling level at "Fully Shackled" on July 10, 2019.  Shackling Minute Order, ECF No. 96.  Torres asserts that when he is transported to court appearances, his hands and feet are shackled, beginning in his cell at CSP–Sacramento, with a black box placed over his hands to further restrict hand movements.  Shackling Mot. at 2.  He cannot move his hands to eat or use the restroom while his hands are in the black box and shackles.  *Id.*  He states the black box causes "severe pain, numbing of the hands, swelling of the wrist," that prevents him from "adequately representing himself as [he] cannot write, take notes, […] cannot think clear[ly] or focus on the court proceedings as concentration is difficult due to the pain [he] is suffering from the handcuffs and black box, as well as the humiliation of being shackled like an animal."  Shackling Reply at 2.

In his supplemental briefing on the motion, Torres alleges the black box is "dehumanizing and effecting [sic] his mental state, he cannot focus or concentrate on court proceedings due to the severe pain."  Torres Shackling Suppl. Br. at 3.  He asserts in a sworn declaration he has no intention to disrupt the proceedings, nor has he done so in any other judicial proceeding in which he has been a party.  Torres Shackling Suppl. Br. at 10.

Although Local Rule 401 prescribes the use of a form by which the U.S. Marshals make recommendations to the duty magistrate judge, the court cannot find the form in the record.  The government has not furnished the court with the U.S. Marshals' form, and the court's own investigation into the use of a form has determined that the Marshals for some time have dispensed with preparing the form, as agreed with the Sacramento magistrate judges.[1]  It is also not apparent from the record what findings the magistrate judge made in arriving at her designation of Torres as "Fully Shackled."  Neither party has provided a transcript of the proceedings.

/////

/////

---

[1] The court has brought this change in practice to the attention of the court's Local Rules Committee with a request that it consider an amendment to conform the rules to practice.

Although the court has not convened in-person hearings since the beginning of the coronavirus pandemic in or about mid-March 2020, Torres' shackling order remains in effect for whenever in-person proceedings begin again.

II. DISCUSSION

A. Administrative Segregation

As discussed above, CDCR has moved Torres from administrative segregation to a general population unit. The court therefore regards his motion for release from administrative segregation as moot, and denies it as such.

B. Shackling Order

i. Legal Standards

In proceedings before a jury, the court must be "'persuaded by compelling circumstances that some measure is needed to maintain security of the courtroom,' and 'the court must pursue less restrictive alternatives before imposing physical restraints.'" *Gonzalez v. Pliler*, 341 F.3d 897, 900 (9th Cir. 2003) (quoting *Duckett v. Godinez*, 67 F.3d 734, 748 (9th Cir. 1995)). In making shackling decisions, "judges must seek to maintain a judicial process that is a dignified process." *Deck v. Missouri*, 544 U.S. 622, 631 (2005). Shackling defendants "effectuates some diminution of the liberty of pretrial detainees and detracts to some extent from the dignity and decorum of a critical stage of a criminal prosecution." *United States v. Howard*, 480 F.3d 1005, 1008 (9th Cir. 2007), *overruled on other grounds by Sanchez-Gomez*, 859 F.3d at 661. In addition to considering the maintenance of dignified proceedings, a court must consider two other rationales when deciding to shackle a criminal defendant: preserving the presumption of innocence and securing a meaningful defense for the accused. *Deck*, 544 U.S. at 630–31.

Physical restraints may impede a meaningful defense for the defendant if they impair the defendant's mental faculties, impede communication between the defendant and his lawyer, or cause pain to the defendant. *Spain v. Rushen*, 883 F.2d 712, 721 (9th Cir. 1989) (citing *Kennedy v. Cardwell*, 487 F.2d 101, 105-06 (6th Cir. 1973)). Shackles can "impose physical burdens, pains, and restraints" and "ten[d] to confuse and embarrass defendants' mental faculties, and thereby tend materially to abridge and prejudicially affect his constitutional rights." *Deck*,

544 U.S. at 631 (quoting *People v. Harrington*, 42 Cal. 165, 168 (1871) (internal quotation marks omitted)).  The Ninth Circuit recently recognized the prejudicial effect shackling has on inmates proceeding pro se in civil cases and imposed the obligation to make an individualized determination there as well.  *Claiborne v. Blauser*, 934 F.3d 885, 901 (9th Cir. 2019).

The right to an individualized determination of an essential governmental interest justifying physical restraint "applies whether the proceeding is pretrial, trial, or sentencing, with a jury or without."  *United States v. Sanchez-Gomez*, 859 F.3d 649, 661, 666 (9th Cir. 2017), *overruled on other grounds in United States v. Sanchez-Gomez*, 138 S.Ct. 1532 (2018).  An individualized determination "respects our foundational principle that defendants are innocent until proven guilty."  *Id.* at 661.  This court's Local Rule 401(c) provides a procedure for making this individualized determination.  If a shackling order is challenged in subsequent proceedings, the court reviews the decision *de novo,* E.D. Cal. L. R. 401(d), as the court does here below.

ii.   *De Novo* Review of Shackling Decision

In conducting its review, the court notes the record is scant, and the court is unable to review any factual findings the magistrate judge made in reaching her shackling determination.  In any event, the parties agreed at hearing it is within this court's power to "start from scratch."

a.   Single Defendant Proceedings

In hearings where a defendant appears alone, the factors to consider in deciding whether to shackle are the nature and circumstances of the offense charged, particularly whether it is a crime of violence, the weight of the evidence, the history and characteristics of the defendant, and the circumstances of the defendant's arrest.  E.D. Cal. L. R. 401(c)(1)(D).

While the court does not give undue weight to this factor to preserve the presumption of innocence, factor (i), the nature and circumstances of the offense charged, supports full shackling.  Torres is charged with conspiracy to distribute narcotics.  Although the indictment alleges several coconspirators committed murder in furtherance of the Aryan Brotherhood, Torres is not accused of any acts of violence in the instant proceeding.  Indictment ¶ 56.  The violent acts attributed to Torres' codefendants were allegedly to enforce the code of conduct of the Aryan Brotherhood.  Torres is alleged to be a member of the Mexican Mafia, not

5

the Aryan Brotherhood, and although the government asserts the Mexican Mafia is similarly violent, that violence is not at issue in this proceeding. On the other hand, the government alleges Torres engaged in a sophisticated drug distribution conspiracy from within prison. Such acts necessarily involve the deliberate subversion of penal authority. Although Torres is not alleged to have engaged in violence in furtherance of the conspiracy, his alleged confederates are accused of multiple homicides in furtherance of the same conspiracy. Factor (i) thus supports shackling.

Again, without assigning undue weight, factor (ii), the weight of the evidence in the case is significant. The government cites several intercepted calls capturing Torres discussing obtaining kilograms of heroin with codefendant William Sylvester and a stash house raid corroborating the trafficking activity. Opp'n to Shackling Mot. at 6. Factor (ii) also supports shackling.

Factor (iii), the history and characteristics of the in custody defendant, also supports full shackling. Although Torres has not been disruptive or committed crimes of violence in the recent past, he has been convicted of three crimes involving the killing or attempted killing of another human being. Opp'n to Shackling Mot. at 7. His last conviction involved witness intimidation, evidencing a propensity to subvert and undermine court proceedings. Mot. for Video Teleconferencing, Ex. J, ECF No. 144-10. Torres has also accrued rule violations close in time to the initial litigation of this motion while incarcerated for possession of a cellular telephone, also showing a propensity to subvert prison discipline. *Id.*; Gov't Suppl. Evid. Ex. C. Although Torres states he "does not have any history of misconduct in the court" (Reply to Shackling Mot. at 6), this misapprehends the scope of Local Rule 401(c)(1)(D)(iii). Rather, the court is directed to consider the defendant's history as a whole.

Although factor (iv) may be considered, it is not particularly probative in this situation. Torres asserts factor (iv) is inapplicable because he was in custody for a life sentence when he was arrested on his current charges. Shackling Reply at 6. In other words, he had no opportunity to demonstrate the "indicia of possible flight" this factor directs the court to consider. It carries no weight here.

/////

6

Torres relies heavily on *Spain v. Procunier*, 600 F.2d 189 (9th Cir. 1979) in arguing against shackling. Shackling Suppl. Br. at 4-5. In *Spain*, a group of inmates at San Quentin brought a civil action challenging the prison's practice of shackling them in neck chains for all movements outside their cells. *Spain*, 600 F.2d at 197. The Ninth Circuit found the trial court's order barring use of the chains was justified, "not because neck chains are in themselves always cruel, but because their use on these plaintiffs for more than a 4 ½ year period was." *Id.* In addition, the court noted "[t]he movement of prisoners outside the prison inherently presents a serious threat to their guards and the population at large." *Id.* at 198. *Spain* is distinguishable because it does not address the use of shackles or other restraints in court proceedings at all.

### b.  Multi-Defendant Proceedings

In proceedings involving multiple codefendants, the court also must consider the single-defendant factors enumerated in Local Rule 401(c)(1), as well as the total number of defendants in the action, the U.S. Marshals staffing actually available to counteract any disruption or untoward behavior, and the logistical disruption that might result from having numerous defendants with varied restraint levels. E.D. Cal. L. R. 401(c)(2)(B)–(D).

In hearings at which the other incarcerated defendants will appear, the total number of defendants will be ten or more. *See, e.g.,* Mot. for Video Teleconferencing, ECF No. 144. Marshals staffing at such hearings is significant even when the defendants are shackled. Increasing the potential for disruption by allowing some defendants to be unshackled would increase the Marshals staffing quotient commensurately. It is not clear the Marshals would be able to absorb such a staffing increase. Allowing partial unshackling of some, but not all defendants, would create a significant logistical challenge. Currently, the incarcerated co-defendants sit together in the jury box when appearing together. If Torres were unshackled at the hands, he would need to be separated from the other defendants, forcing Marshals to monitor both his location in the courtroom and the other defendants in the box.

### c.  Conclusion

In total, the record supports a full shackling order for Torres under Local Rule 401. The Local Rule is not the end of the inquiry, however. Torres asserts he suffers pain from the

7

handcuffs and black box over his hands that prevents him from writing, taking notes or thinking clearly while representing himself. Shackling Mot. Reply at 2. The court notes Torres has not voiced these complaints at any hearing at which he's appeared and has generally appeared focused and capable. The Supreme Court recognized in *Deck* that pain from shackles could impinge a defendant's right to a meaningful defense. *Deck*, 544 U.S. at 631. The *Deck* Court expressed concerns about painful shackles' interference with the defendant's "ability to communicate" with his lawyer. *Id.* (citing *Illinois v. Allen*, 397 U.S. 337, 344 (1970)). The pain of shackles raises similar, and perhaps heightened concerns for a pro se defendant, who must not only watch often-unfamiliar proceedings, but participate. While the court denies the motion at this time, it does so without prejudice to Torres' refiling a motion for the unshackling of his writing hand when appearing alone. Whether the court would grant such a motion would be contingent on updated information on both his conduct in prison, his standby counsel's ability to take notes for him and other relevant factors at the time.

When Torres appears with codefendants, the security concerns reflected in Local Rule 401 outweigh Torres' individual rights, and he is to remain fully shackled. *See Deck*, 544 U.S. at 631 ("We do not underestimate the need to restrain dangerous defendants to prevent courtroom attacks, or the need to give trial courts latitude in making individualized security determinations.").

### iii. Due Process

Torres also argues the magistrate judge issued her shackling order in violation of procedural due process and Eastern District Local Rule 401. The rule states,

> (A) Prior to the commencement of initial appearances, the Marshal shall make an individualized shackling recommendation for each prisoner. In connection with this recommendation, the Marshal shall complete a written form (Prisoner Restraint Level Form) giving the recommendation regarding the level of restraint necessary, if any.
>
> (B) Once the Prisoner Restraint Level Form is completed by the Marshal, and as soon as practicable, it shall be given to the Judge or Magistrate Judge presiding over the initial proceeding. The Court may review the information on the Form, a Pre-Trial Service report, and any other information pertinent to shackling. The Court shall then annotate on the form its determination regarding the appropriate restraint level. Unless it is not feasible, the Form shall be distributed

to the defendant's attorney and the Assistant United States Attorney prior to hearing.

E.D. Cal. L.R. 401(c)(1).

Torres apparently never received the Prisoner Restraint Level Form. At the hearing, the lead Assistant United States Attorney stated he believed the form had been disposed of. The court's own investigation determined the form had not been used, in this instance at least. This omission reflects noncompliance with the court's own rules on shackling.

A district court's noncompliance with its own local rules does not create a due process violation per se. *United States v. Simmons*, 476 F.2d 33, 35 (9th Cir. 1973). The court violates due process when the defendant is prejudiced by its failure to apply the rules. *Id.* (citing *United States v. Jenson*, 450 F.2d 1258, 1261 (9th Cir. 1971)).

The purpose of Local Rule 401 is to provide for the individualized shackling determination mandated by *Deck*, 544 U.S. at 631. Although the court notes the noncompliance with Local Rule 401's requirement of the Prisoner Restraint Level Form, Torres has not demonstrated how this prejudiced him. Ultimately, he has received an individualized determination as contemplated in the rule. He has not shown a due process violation.

III.  CONCLUSION

For the foregoing reasons, defendant's motion to order CDCR to release him from administrative segregation is DENIED as moot. Defendant's motion to "stop inhuman shackling," here construed as a motion for review of his shackling order, is DENIED without prejudice to refiling for the limited purposes outlined above. Defendant's shackling level will remain "Fully Shackled."

This order resolves ECF No. 175 and ECF No. 204.

IT IS SO ORDERED.

DATED: October 7, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

9