Rene L. Valladares
Federal Public Defender
Brian D. Pugh
Assistant Federal Public Defender
Florida State Bar No. 0907294
Email: brian_pugh@fd.org
Sean A. McClelland
Assistant Federal Public Defender
Nevada State Bar No. 16581
Email: sean_mcclelland@fd.org
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-6261 (Fax)

Steven G. Kalar
Kalar Law Office
California State Bar No. 189550
Email: Steven@KalarLaw.com
1569 Solano Ave. #312
Berkeley CA 94707
(415) 295-4675
(415) 338-9950 (Fax)

Attorneys for Ronald Yandell

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RONALD YANDELL, and<br><br>WILLIAM SYLVESTER,<br><br>　　　　Defendants. | Case No. 2:19-CR-00107-KJM<br><br>**DEFENSE RENEWED MOTION TO SEVER**<br><br>Date: March 11, 2024<br>Time: 1:00 p.m.<br><br>Chief Judge Kimberly J. Mueller,<br>United States District Court |

I. INTRODUCTION

If Mr. Troxell's defense was not clear before trial, it is now: Mr. Yandell and Mr. Sylvester were the ringleaders—Mr. Troxell was just trying to stop them. To make out that theory, Mr. Troxell is directly inculpating Mr. Yandell and Mr. Sylvester. And he is doing so in ways largely unavailable to the government: he is eliciting evidence on Mr. Yandell's and Mr. Sylvester's uncharged (and unnoticed) other bad acts, soliciting improper propensity-for-violence testimony, using their and other (hearsay) statements to prove consciousness-of-guilt, and inviting ad hominem attacks about his co-defendants' alleged contacts with law enforcement.

Mr. Troxell's defense is antagonistic to Mr. Yandell's and Mr. Sylvester's. If the jury buys Mr. Troxell's theory, Mr. Yandell and Mr. Sylvester are guilty. Mr. Troxell's defense thus "precludes acquittal" of Mr. Yandell and Mr. Sylvester. *United States v. Mayfield*, 189 F.3d 895, 899 (9th Cir. 1999). And that is a particular problem here given Mr. Troxell's use of otherwise-inadmissible evidence.

Mr. Yandell and Mr. Sylvester therefore renew their motions to sever.

II. BACKGROUND

Pretrial, all three co-defendants sought to sever Mr. Yandell's and Mr. Sylvester's trials from Mr. Troxell's because their defenses were antagonistic to each other. ECF Nos. 1838, 1839, 1841. The Court denied those motions. ECF No. 1853. The three co-defendants again sought severance on the same grounds on March 4, 2024, after Doug McClure's testimony, further asking for a limiting instruction if the motion was denied. ECF No. 1960. The Court denied that motion on March 5. *Id.*

Since then, Mr. Troxell has further elicited inculpatory evidence against Mr. Yandell and Mr. Sylvester—even beyond that elicited by the government—including:

- That Mr. Yandell and Mr. Sylvester have reputations for certain negative character traits, including:
    - That Mr. Yandell's character was allegedly more dangerous and more irrational than other A.B. members';

3

- o That Mr. Sylvester's character was allegedly extremely dangerous;
- That Mr. Yandell and Mr. Sylvester allegedly plotted to kill various people, including:
  - o That Mr. Yandell and Mr. Sylvester plotted to kill Todd Ashker (not an alleged victim here) because Mr. Ashker gave a television interview or had drug problems;
  - o That Mr. Sylvester allegedly bragged to Mr. Mazza that Mr. Sylvester had put in motion the Devlin Stringfellow homicide (a homicide Mr. Mazza thought was very cowardly);
  - o That Mr. Sylvester allegedly planned to have Samuel Keeton (not an alleged victim here) murdered;
  - o That Mr. Sylvester allegedly planned to have Travis Burhop (not an alleged victim here) murdered;
  - o That Mr. Yandell allegedly planned to have Donald Mazza (not an alleged victim here) murdered;
  - o That Mr. Yandell alone allegedly directed Trippe and Mazza to be murdered, allegedly without approval by the so-called commission;
  - o That Mr. Yandell and Mr. Sylvester allegedly may have also been involved in an unrelated murder committed in Anaheim;
- That Mr. Yandell and Mr. Sylvester allegedly orchestrated a marijuana robbery in Sacramento;
- That Mr. Yandell and Mr. Sylvester were allegedly still "politicking"—that is, organizing gang activity—while in jail on this case;
- That Mr. Yandell was allegedly stupid for continuing to talk about allegedly-incriminating topics on the phone after saying his phone was tapped;
- That Mr. Yandell allegedly expressed concern that comments he had made during recorded conversations were compromising to his criminal case; and

4

- That Mr. Yandell and Mr. Sylvester were allegedly "rats" for talking with CDCR officials.[1]

In brief: Mr. Troxell is apparently advancing a theory in which Mr. Yandell and Mr. Sylvester control a culpable, violent branch of the A.B.—while Mr. Troxell, presumably, does not.

### III. ARGUMENT

Mr. Troxell's defense theory is antagonistic to Mr. Yandell's and Mr. Sylvester's. If the jury agrees with him, Mr. Yandell and Mr. Sylvester are guilty: they—not Mr. Troxell—were responsible for the violence and drug trafficking here. Mr. Troxell's defense thus "precludes acquittal" of Mr. Yandell and Mr. Sylvester. *Mayfield*, 189 F.3d at 899. And the particulars of the defense create specific prejudice here: Mr. Troxell is smuggling in various forms of inculpatory character and hearsay evidence that would otherwise be inadmissible against Mr. Yandell and Mr. Sylvester.

Mr. Yandell and Mr. Sylvester should thus be severed from Mr. Troxell. Mr. Troxell's trial can proceed with the present jury; the prejudice has thus far been mainly experienced by Mr. Yandell and Mr. Sylvester. Mr. Yandell and Mr. Sylvester should then be tried later, with a new jury.

And if the Court does not sever, it should nonetheless impose various safeguards to blunt the prejudice Mr. Yandell and Mr. Sylvester are experiencing here. It should: (1) direct Mr. Troxell to proffer details on his defense theory *in camera*; (2) have Mr. Troxell's counsel cross-examine witnesses first; (3) have Mr. Troxell present his defense case before Mr. Yandell and Mr. Sylvester; (4) have Mr. Troxell's counsel present closing argument before Mr. Yandell's and Mr. Sylvester's counsel; (5) issue appropriate limiting

---

[1] As discussed with the Court on March 6, counsel for Mr. Troxell also personally called Mr. Yandell a "rat" on his way out of the courtroom on March 5.

instructions after Mr. Troxell's cross-examinations; and (6) prohibit Mr. Troxell from eliciting improper character and hearsay evidence against Mr. Yandell and Mr. Sylvester.

### A.     Mr. Yandell and Mr. Sylvester should be severed from Mr. Troxell.

The Court should sever Mr. Yandell and Mr. Sylvester from Mr. Troxell. Mr. Troxell's apparent defense is to inculpate his co-defendants as violent ringleaders behind the various allegations here (and others besides). That is irreconcilable with Mr. Yandell's and Mr. Sylvester's defenses—which turn on them *not* being violent ringleaders behind the various allegations here. That direct conflict in defense theories requires severance.

Severance is warranted when "the core of the co-defendant's defense" is "so irreconcilable" with "the core of [another defendant's] own defense" that, if accepted, the co-defendant's theory "precludes acquittal of the defendant." *United States v. Mayfield*, 189 F.3d 895, 899 (9th Cir. 1999) (quoting *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996)). The classic example of such an irreconcilable defense: to exculpate himself, one co-defendant "accuse[s]" the others of committing the crime. *Id.* at 900 (quoting *United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991)). In such a setting, the other defendants improperly face "a second prosecutor" seeking their conviction:

> Defendants who accuse each other bring the effect of a second prosecutor into the case with respect to their codefendant . . . [c]ross examination of the government's witnesses becomes an opportunity to emphasize the exclusive guilt of the other defendant . . . [c]losing arguments allow a final opening for codefendant's counsel to portray the other defendant as the sole perpetrator of the crime.

*Id.* (quoting *Tootick*, 952 F.2d 1082) (omissions in original).

Moreover, the prejudice of facing such a second-prosecutor is "reversible" when a defendant's "substantive rights" are violated. *Tootick*, 952 F.2d at 1082. Such "reversible prejudice" ordinarily stems from the co-defendant hindering the defendant's "opportunity to present an individual defense." *Id.* And such an effect is "particularly troublesome" when the co-defendant avoids "the limitations and standards imposed on the government

prosecutor"—including, for instance, where the co-defendant is eliciting evidence the government could not elicit. *Id.*; *see Mayfield*, 189 F.3d at 905.

### 1. Mr. Troxell's defense inculpates Mr. Yandell and Mr. Sylvester as alleged violent ringleaders—including in a range of uncharged conduct.

Against this backdrop, Mr. Troxell's defense is irreconcilably antagonistic to Mr. Yandell's and Mr. Sylvester's. The core of Mr. Troxell's defense is effectively third-party (or, perhaps more accurately, second-party) culpability: that Mr. Yandell and Mr. Sylvester did it. That is antagonistic to their defense: that they did not do it. Severance is thus appropriate.

Mr. Troxel's apparent Mr.-Yandell-and-Mr.-Sylvester-culpability defense is proceeding on multiple fronts. *See Tootick*, 952 F.2d at 1084 (describing antagonistic defense where defendant "used his cross-examination of the government witnesses to incriminate [a co-defendant]"). He is eliciting evidence that Mr. Yandell and Mr. Sylvester have reputations for dangerousness or irrationality. He is implicating them in a range of charged—and uncharged—murders and murder plots. He is suggesting they were involved in unrelated murders, like the one that allegedly took place in Anaheim. He is suggesting they orchestrated drug robberies. He is claiming that they realized their own guilt. He is asserting that they still engaged in gang activity while in jail. And he is labeling them "rats" who, presumably, would do anything to avoid criminal exposure. Simply put: Mr. Troxell's defense seems to be that Mr. Yandell and Mr. Sylvester were the "ringleader[s]" "who had control over the [charged conduct]." *Mayfield*, 189 F.3d at 900.

That theory is antagonistic to Mr. Yandell's and Mr. Sylvester's defenses. *Id.* At core, their defenses turn on a simple premise: they did not control the charged crimes. *See*

*id.*[2] Mr. Troxell's claim that they actually did control the crimes is "irreconcilable" with that position. *Id.* at 899. Severance is therefore warranted. *Id.* at 899–900.

### 2. Mr. Troxell's defense is also prejudicing Mr. Yandell's and Mr. Sylvester's substantive rights, including by eliciting improper character and hearsay evidence.

The failure to sever here would be particularly prejudicial to Mr. Yandell and Mr. Sylvester. Mr. Troxell is pursuing his defense with various types of otherwise inadmissible evidence. Much of that evidence would be unavailable to the government in this trial. Sidestepping the "limitations and standards imposed on the government prosecutor" like that produces the sort of "reversible prejudice" that warrants reversal on appeal. *Tootick*, 952 F.2d at 1082.

Perhaps most significantly, Mr. Troxell's counsel is eliciting evidence on un-noticed other bad acts—something the government could not do here. Those other acts include, for instance, alleged plots to kill Todd Ashker, Samuel Keeton, Travis Burhop, and Donald Mazza. Had the government tried to elicit evidence on those subjects (which it has not), it would have had to provide proper notice so that Mr. Yandell and Mr. Sylvester could "ha[ve] a fair opportunity to meet" the allegations. FED. R. EVID. 404(b)(3). But as a defendant, Mr. Troxell could elicit such testimony without providing any sort of notice.[3] *See id.* (applying to only "the prosecutor"). The result: Mr. Troxell is getting in inculpatory evidence unavailable to the government.

---

[2] In some cases, Mr. Yandell and Mr. Sylvester contest that certain acts (the Richardson homicide, for instance) were done in furtherance of any alleged conspiracy. But even on those charges, Mr. Troxell's defense is antagonistic: he has, for example, elicited evidence that Mr. Sylvester allegedly had animosity towards non-A.B. gangs.

[3] Mr. Yandell and Mr. Sylvester have objected to the admission of this other acts evidence as improper propensity evidence. The Court has overruled those objections and permitted Mr. Troxell to elicit evidence on at least four uncharged, un-noticed murder conspiracies—as well as suggesting that Mr. Yandell and Mr. Sylvester may have orchestrated another, unrelated (and uncharged and un-noticed) homicide in Anaheim.

Nor is that the only prejudicial—and otherwise impermissible—evidence Mr. Troxell's counsel has elicited against Mr. Yandell and Mr. Sylvester. He has elicited improper character-trait evidence on Mr. Yandell's and Mr. Sylvester's alleged reputation for dangerousness and irrationality. *But see* FED. R. EVID. 404(a) (prohibiting such evidence). He has elicited improper hearsay statements by Mr. Yandell, Mr. Sylvester, and various alleged co-conspirators allegedly reflecting Mr. Yandell and Mr. Sylvester's guilt. *But see* FED. R. EVID. 801(c), 802 (prohibiting such evidence).[4] And he has elicited improperly prejudicial and inflammatory evidence suggesting that Mr. Yandell and Mr. Sylvester are allegedly "rats." *But see* FED. R. EVID. 403 (prohibiting such evidence).

Mr. Troxell has, in short, elicited various forms of evidence that "could not have been admitted against [Mr. Yandell and Mr. Sylvester] had [they] been tried separately." *Mayfield*, 189 F.3d at 905. That puts this case in "precisely the sort of circumstances" that "require severance." *Id.*; *accord Tootick*, 952 F.2d at 1081–82 (identifying that denying severance in that context is "reversible").

* * *

Mr. Troxell's defense directly inculpates Mr. Yandell and Mr. Sylvester. And it involves the use of evidence that the government would otherwise be unable to introduce. Keeping Mr. Yandell and Mr. Sylvester in this trial therefore prejudices their substantive rights.

This trial should thus continue with Mr. Troxell alone. Mr. Yandell and Mr. Sylvester should be tried later with a new jury that has not been exposed to Mr. Troxell's prejudicial evidence.

---

[4] The government—but not a defendant—can sometimes introduce statements by a defendant's co-conspirator as substantive evidence. *See* FED. R. EVID. 801(d)(2)(E). A defendant generally cannot introduce such evidence because the co-conspirator is not "an opposing party." *See id.*

### B. If the Court denies severance, it should take various measures to blunt the prejudicial effects to Mr. Yandell and Mr. Sylvester.

If, for whatever reason, the Court does not sever Mr. Yandell and Mr. Sylvester (as discussed above, it should), it should take various steps to address the prejudicial effects caused by Mr. Troxell's apparent defense. Specifically, it should: (1) direct Mr. Troxell to proffer details on his defense theory *in camera*; (2) have Mr. Troxell's counsel cross-examine witnesses first; (3) have Mr. Troxell present his defense case before Mr. Yandell and Mr. Sylvester; (4) have Mr. Troxell's counsel present closing argument before Mr. Yandell's and Mr. Sylvester's counsel; (5) issue appropriate limiting instructions after Mr. Troxell's cross-examinations; and (6) prohibit Mr. Troxell from eliciting improper character and hearsay evidence against Mr. Yandell and Mr. Sylvester.

#### 1. The Court should direct Mr. Troxell to proffer his defense theory *in camera*.

First, the Court should direct Mr. Troxell to proffer details on his defense theory *in camera*. *See United States v. Murillo*, No. ED CR 05-69 (B) VAP, 2008 WL 11411629, at *17 (C.D. Cal. May 23, 2008) (noting court had evaluated the defendants' planned potentially-antagonistic defenses *in camera*). As discussed above, Mr. Troxell's cross-examinations reveal that his defense turns on inculpating Mr. Yandell and Mr. Sylvester. But the precise contours of that defense would help the Court better address the various objections the parties are likely to lodge should Mr. Yandell and Mr. Sylvester continue in this case.

#### 2. The Court should have Mr. Troxell's counsel cross-examine witnesses first.

Second, the Court should have Mr. Troxell's counsel cross-examine government witnesses first. *See* FED. R. EVID. 611(a) & advisory committee's note (describing court's authority to control "the mode and order of examining witnesses"); 2 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE (CRIMINAL) § 292 & n.6 (4th ed. & update 2023) (noting that a court "might usefully [] consider[]" setting the "order of cross-examination where there are multiple defendants" (quotation omitted)). Mr. Troxell's cross-

examinations are directly prejudicing Mr. Yandell and Mr. Sylvester by introducing various types of inculpatory evidence against them. If they remain in this trial, then, their counsel should be permitted the opportunity to address that prejudice with follow-on questioning.

### 3. The Court should have Mr. Troxell present his defense case before Mr. Yandell and Mr. Sylvester.

Third, and for similar reasons, the Court should have Mr. Troxell's counsel present his defense case before Mr. Yandell and Mr. Sylvester. *See* 2 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE (CRIMINAL) § 292 & n.6 (4th ed. & update 2023). As with cross-examination, doing so would permit Mr. Yandell and Mr. Sylvester to attempt to at least mitigate the prejudicial effects of Mr. Troxell's presentation.

### 4. The Court should have Mr. Troxell's counsel present closing argument before Mr. Yandell's and Mr. Sylvester's counsel.

Fourth, and for similar reasons, the Court should have Mr. Troxell's counsel present closing argument before Mr. Yandell's and Mr. Sylvester's counsel. *See id.* As with cross-examination, doing so would permit Mr. Yandell and Mr. Sylvester to attempt to at least mitigate the prejudicial effects of Mr. Troxell's presentation.

### 5. The Court should issue appropriate limiting instructions following Mr. Troxell's cross-examinations.

Fourth, the Court should issue appropriate jury instructions following Mr. Troxell's cross-examinations. *See Tootick*, 952 F.2d at 1083, 1085 (identifying the importance of "instructions from the court," especially beyond those "given only at the traditional times"). In particular, it should inform the jury that the government—not any defendant—bears the burden of establishing guilty against each defendant beyond a reasonable doubt. The Court should issue such instructions after any examination in which Mr. Troxell's counsel elicits facts that might inculpate Mr. Yandell or Mr. Sylvester.

11

### 6. The Court should prohibit Mr. Troxell's from eliciting improper character and hearsay evidence.

And, fifth, the Court should prohibit Mr. Troxell from eliciting improper character and hearsay evidence. As discussed above, Mr. Troxell has thus far elicited evidence on Mr. Yandell's and Mr. Sylvester's alleged reputations for dangerousness and irrationality. *But see* FED. R. EVID. 404(a). And he has also elicited hearsay statements by Mr. Yandell, Mr. Sylvester, and various alleged co-conspirators suggesting Mr. Yandell's and Mr. Sylvester's consciousness-of-guilt. *But see* FED. R. EVID. 801(c), 802. Neither type of evidence is properly admitted. Mr. Troxell should thus be prohibited from eliciting such evidence.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

The Court should sever Mr. Yandell and Mr. Sylvester from Mr. Troxell. And if it does not, it should: (1) direct Mr. Troxell to proffer details on his defense theory *in camera*; (2) have Mr. Troxell's counsel cross-examine witnesses first; (3) have Mr. Troxell present his defense case before Mr. Yandell and Mr. Sylvester; (4) have Mr. Troxell's counsel present closing argument before Mr. Yandell's and Mr. Sylvester's counsel; (5) issue appropriate limiting instructions after Mr. Troxell's cross-examinations; and (6) prohibit Mr. Troxell from eliciting improper character and hearsay evidence against Mr. Yandell and Mr. Sylvester

Dated this March 10, 2024.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Brian D. Pugh*
BRIAN D. PUGH
Assistant Federal Public Defender

*/s/ Sean A. McClelland*
SEAN A. McCLELLAND
Assistant Federal Public Defender


Law Office of Steven G. Kalar

*/s/ Steven G. Kalar*
STEVEN G. KALAR